IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

JODY BLATCHLEY; and DELFINA BLATCHLEY

      Plaintiff,

v.

RICHARD CUNNINGHAM, M.D. PETER JANES, M.D.; TODD WILLIAM PETERS, M.D.,
MATTHEW CAIN, PA-C, TIMOTHY SMITH, PA-C, CAMERON YOUNGBLOOD, PA-C,
ST. ANTHONY SUMMIT MEDICAL CENTER; and VAIL-SUMMIT ORTHOPAEDICS, P.C.

      Defendants.

---

## PLAINTIFF'S COMPLAINT, JURY DEMAND AND CERTIFICATE OF REVIEW

---

Plaintiff, Jody Blatchley, by and through his attorneys, Leventhal & Puga, P.C., hereby

submits the following Complaint, Jury Demand and Certificate of Review:

### I.  CERTIFICATE OF REVIEW

Pursuant to C.R.S. § 13-20-602(3)(a), counsel certifies as follows:

1.    Counsel has consulted with physicians and health care providers with expertise in

the areas of the alleged conduct as set forth in Plaintiff's Complaint;

2.    The physicians and health care providers who have been consulted have reviewed

all known facts relevant to the allegations of conduct as complained of in Plaintiff's Complaint;

3.    Based upon such facts, these physicians and health care providers have concluded

the filing of the claims against Defendants does not lack substantial justification within the

meaning of C.R.S. § 13-17-102(4); and,

4.     The physicians and health care providers who have reviewed all known facts relevant to the allegations of conduct as contained in Plaintiff's Complaint for Damages meet the requirements set forth in C.R.S. § 13-64-401.

## II. PARTIES AND JURISDICTION

5.     This Honorable Court has jurisdiction as this is a diversity action filed under the provisions of 28 U.S.C. § 1332 by reason of the diversity of the citizenship of the parties and the amount in controversy. The Plaintiff are citizens of New Zealand. The Defendants are citizens of Colorado or corporations incorporated under the law of Colorado with their principal places of business in Colorado. The amount in controversy, without interest and costs, exceeds $75,000.00.

6.     Plaintiff, Jody Blatchley, hereafter referred to as "Plaintiff Blatchley" is and was, at all times relevant, a resident of New Zealand.

7.     Plaintiff, Delfina Blatchley, is and was, at all times relevant, a resident of New Zealand

8.     Upon information and belief, at all relevant times, Richard Cunningham, M.D., hereafter referred to as "Defendant Cunningham", was a physician licensed to practice medicine in the State of Colorado, who at all times relevant, resided in the State of Colorado.

9.     Upon information and belief, at all relevant times, Peter Janes, M.D., hereafter referred to as "Defendant Janes", was a physician licensed to practice medicine in the State of Colorado, who at all times relevant, resided in the State of Colorado.

10.     Upon information and belief, at all relevant times, Todd William Peters, M.D., hereafter referred to as "Defendant Peters", was a physician licensed to practice medicine in the State of Colorado, who at all times relevant, resided in the State of Colorado.

11. Upon information and belief, at all relevant times, Matthew Cain, PA-C, hereafter referred to as "Defendant Cain", was a physician assistant licensed in the State of Colorado, who at all times relevant, resided in the State of Colorado.

12. Upon information and belief, at all relevant times, Cameron Youngblood, PA-C, hereafter referred to as "Defendant Youngblood", was a physician assistant licensed in the State of Colorado, who at all times relevant, resided in the State of Colorado.

13. Upon information and belief, at all relevant times, Timothy Smith, PA-C, hereafter referred to as "Defendant Smith", was a physician assistant licensed in the State of Colorado, who at all times relevant, resided in the State of Colorado.

14. Upon information and belief, at all relevant times, Defendant Vail-Summit Orthopaedics, P.C., (hereinafter "Defendant Vail-Summit Orthopaedics") had its principal place of business at 360 Peak One Drive, Suite 180, Frisco, CO 80443 and was authorized to do business in the State of Colorado.

15. Upon information and belief, Defendant, St. Anthony Summit Medical Center, hereinafter to as "Defendant SASMC" had its principal place of business at 340 Peak One Drive, Frisco, CO 80443 and was authorized to do business in the State of Colorado.

### III. GENERAL ALLEGATIONS

16. Plaintiffs incorporates paragraphs 1 through 15 herein by reference.

17. In March of 2013, Plaintiff Blatchley was in Summit County in his capacity as Coach of the New Zealand Olympic Snowboard Team.

18. Upon information and belief, on March 5, 2013, Plaintiff Blatchley fell and was injured while snowboarding at Keystone in Summit County, Colorado.

19.     Plaintiff Blatchley was initially evaluated at St. Anthony Keystone Medical Clinic where he was diagnosed with a left comminuted tibial plateau fracture and right calcaneal fracture on March 5, 2013.

20.     Plaintiff Blatchley was taken emergently to Defendant SASMS's Emergency Department ("ED") at approximately 1755 on March 5, 2013.

21.     CT imaging at the ED on March 5, 2013 showed a complex left comminuted proximal tibial fracture, left cuboid fracture, comminuted depressed intra-articular right calcaneus fracture, and a negative finding for his right knee.

22.     Plaintiff Blatchley was admitted to Defendant SASMC at approximately 1815 on March 5, 2013.

23.     Plaintiff Blatchley was taken for left tibial plateau repair surgery at approximately 2005 on March 5, 2013 by Defendant Cunningham and assisted by Defendant Cain.

24.     Plaintiff Blatchley was taken to the PACU for recovery at approximately 2257 on March 5, 2013 in stable condition.

25.     Plaintiff Blatchley was discharged from the PACU and taken to recovery floor at approximately 2357 on March 5, 2013.

26.     Upon information and belief, on March 6, 2013 at approximately 0100, Defendant Cain, ordered "compartment syndrome intervention, CMS checks q 4hours and prn (color, sensation, passive stretch/ROM of affected extremity), notify LIP for change".

27.     At approximately 1459 on March 7, 2013, Plaintiff Blatchley underwent right calcaneus fixation.

28.     At approximately 2046 on March 7, 2013, Plaintiff Blatchley returned to the recovery floor.

29.     At approximately 2100 on March 7, 2013, it was noted that Plaintiff Blatchley had decreased sensation peroneal and tibial nerve on the left leg, reported pins and needles to the left foot, was unable to move his toes on the left, only his left foot.

30.     At approximately 0035 on March 8, 2013, it was noted that Plaintiff Blatchley had decreased sensation peroneal and tibial nerve on the left leg, reported pins and needles to the left foot, was unable to move his toes on the left, only his left foot.

31.     At approximately 0335 on March 8, 2013, it was noted that Plaintiff Blatchley had decreased sensation peroneal and tibial nerve on the left leg, reported pins and needles to the left foot, was unable to move his toes on the left, only his left foot.

32.     Based upon information and belief on March 8, 2013 at 0710, Defendant Janes was made aware of the decrease in left foot/toe movement from March 7, 2013.

33.     On March 8, 2013 at 0715 on assessment, Plaintiff Blatchley was noted to have a pain level of 3 on the left leg, it was noted to be warm, pink, edema 2+, pulse strong, +NT, decreased sensation peroneal and tibial nerve (pt. has no anterior ankle flexion; able to dorsal flex foot with minimal pressure with no movement of toes).

34.     Based upon information and belief, a request for a licensed independent practioner to assess Plaintiff Blatchley was made by the staff of Defendant SASMC at approximately 0710 on March 8, 2013.

35.     Based upon information and belief, the findings of no movement in Plaintiff Blatchley's toes was reported to Mary Bryan, PA-C at approximately 0715 on March 8, 2013.

36.       Based upon information and belief, Defendant Janes assessed Plaintiff Blatchley at approximately 0720 on March 8, 2013.

37.       On March 8, 2013 at approximately 0914, Defendant Smith, evaluated Plaintiff Blatchley and noted, chief complaint of severe pain in the left lower extremity and that his wife said Plaintiff Blatchley could wiggle his toes post-operative but has lost the ability over time.

38.       On evaluation at 0914, on March 8, 2013, Defendant Smith noted that Plaintiff Blatchley tolerates PROM of all toes w/o increased pain- can feel light touch, unable to move toes on his own, cap refill <2sec, calf soft/compressible.

39.       Defendant Smith ordered Toradol 15 mg on March 8, 2013 at approximately 0914.

40.       On March 8, 2013 at approximately 1130, Plaintiff Blatchley's left lower extremity was assessed by the nursing staff at Defendant SASMC as warm, pink, edema 2+, pulse strong, +NT, absent sensation peroneal and decreased sensation tibial nerve (pt. has small improvement to sensation and ankle movement of L foot; still unable to wiggle) dors:ankle 1/5 dors: toes 0/5, plantar:ankle 2/5 plantar:toes 0/5.

41.       On March 8, 2013 at approximately 1609, Plaintiff Blatchley's left lower extremity was assessed by the nursing staff at Defendant SASMC as -warm, pink, edema 2+, pulse strong, +NT, absent sensation peroneal and decreased sensation tibial nerve (pt. has small improvement to sensation and ankle movement of L foot; still unable to wiggle toes) dors:ankle 1/5 dors: toes 0/5, plantar:ankle 2/5 plantar:toes 0/5.

42.     On March 8, 2013 at approximately 1706, it was noted that Plaintiff Blatchley was able to maintain tolerable level of pain after the toradol given at 1025 that the CMS in the left lower extremity and improved slightly, detected lateral and medial sides of foot and manages a slight inversion/eversion movement of ankle when trying to move toes.

43.     On March 8, 2013 at approximately 2000, Plaintiff Blatchley's left lower extremity was assessed by the nursing staff at Defendant SASMC as a pain level of 9, warm, pink, edema 2+, pulse strong, +NT, absent sensation peroneal and decreased sensation Tibial nerve (unable to wiggle toes, CMS remains unchanged from CMS assessments) dors:ankle 1/5 dors: toes 0/5, plantar:ankle 2/5 plantar:toes 0/5.

44.     On March 8, 2013, Plaintiff Blatchley had signs of compartment syndrome.

45.     On March 8, 2013, Plaintiff Blatchley had symptoms of compartment syndrome.

46.     On March 8, 2013, Plaintiff Blatchley had compartment syndrome.

47.     On March 9, 2013, at approximately 0001, Plaintiff Blatchley's left lower extremity was assessed by the nursing staff at Defendant SASMC as warm, pink, edema 2+, pulse strong, +NT, absent sensation peroneal and decreased sensation tibial nerve (unable to wiggle toes, CMS remains unchanged from CMS assessments, more pain noted to LLE) dors:ankle 1/5 dors: toes 0/5, plantar:ankle 2/5 plantar:toes 0/5.

48.     On March 9, 2013 at approximately 0400, Plaintiff Blatchley's left lower extremity was assessed by the nursing staff at Defendant SASMC as warm, pink, edema 2+, pulse weak, +NT, absent sensation peroneal and decreased sensation Tibial nerve (unable to wiggle toes,

CMS remains unchanged from CMS assessments, more pain noted to LLE) dors:ankle 1/5 dors:

toes 0/5, plantar:ankle 2/5 plantar:toes 0/5.

49.     On March 9, 2013 at approximately 0558, it was noted by the nursing staff

at Defendant SASMC that Plaintiff Blatchley had very poor pain control during the night and was

consistently rating pain in his left lower extremity at 7/10.  It was noted that the CMS remained

primarily unchanged in the left lower extremity, edema was noted to 1-2+ and pulses harder to

palpitate related to edema.

50.     It was also noted that at approximately 0430 on March 9, 2013, Plaintiff

Blatchley awoke in a severe pain crisis with his pain in his left lower extremity at a 10/10 and his

PCA was noted to be locked out upon assessment.

51.     On March 9, 2013 at approximately 0905, Plaintiff Blatchley's left lower

extremity was assessed by the nursing staff at Defendant SASMC as warm, pink, edema 2+, pulse

weak, +NT, absent sensation peroneal and decreased sensation tibial nerve (unable to wiggle toes,

CMS remains unchanged from CMS assessments, more pain noted to LLE) dors:ankle 1/5 dors:

toes 0/5, plantar:ankle 2/5 plantar:toes 0/5.

52.     On March 9, 2013 at approximately 1140 during physical therapy, it was

noted that Plaintiff Blatchley was in a lot of pain in his left lower extremity, he feels like the TROM

brace is on incorrectly and he stated that he had a rough night with pain and could not sleep.

53.     Based upon information and belief, physical therapy removed the TROM

and polar pack on March 9, 2013 at approximately 1140.

54.     Physical therapy noted that Plaintiff Blatchley's left foot and ankle had

moderate swelling, had slightly intact sensation to light touch on the left foot but it did not feel

normal, he was unable to flex/ext. his left toes but tolerated PROM and also unable to dorsiflex/plantar flex left ankle on March 9, 2013 at approximately 1140.

55.     Upon information and belief, at or near 1140 on March 9, 2013, Defendant Youngblood was notified of Plaintiff Blatchley's condition.

56.     On March 9, 2013 at approximately 1200, Plaintiff Blatchley was assessed by Defendant Youngblood.

57.     On examination, Defendant Youngblood noted that Plaintiff Blatchley was pale, had global decreased sensation in the left lower extremity, decreased motion, 2+ moderate edema, and tender over fracture on March 9, 2013 at approximately 1200.

58.     Upon information and belief, Defendant Youngblood ordered Plaintiff Blatchley to elevate his left lower extremity on March 9, 2013 at approximately 1200.

59.     Upon information and belief, Defendant Youngblood's plan for Plaintiff Blatchley was if his condition didn't improve he was to consider duplex ultrasound of Plaintiff Blatchley's left lower extremity in the morning on March 9, 2013 at approximately 1200.

60.     On March 9, 2013 at approximately 1300, Plaintiff Blatchley's left lower extremity was assessed by the nursing staff at Defendant SASMC as warm, pink, edema 2+, pulse weak, +NT, decreased sensation peroneal  and decreased sensation Tibial nerve (pt. starting to wiggle toes, repots increasing sensation to foot after loosening ACE and removing polar pack, replacing with ice packs. PTA massaging swollen foot) dors:ankle 1/5 dors: toes 1/5, plantar:ankle 2/5 plantar:toes 1/5.

61.     On March 9, 2013 at approximately 1709, it was noted that Plaintiff Blatchley was still experiencing mod. pain control to left popliteal space and at incisions, very

swollen left ankle and foot. He was requiring 15 mg Oxy Ir and PCA. It was noted that he was unable to move his toes, had cont. numbness but able to detect some touch.

62.      On March 9, 2013 at approximately 1900, Plaintiff Blatchley's left lower extremity was assessed by the nursing staff at Defendant SASMC as a pain level of 7, warm, pink, edema 3+, pulse weak, +NT, decreased sensation peroneal and decreased sensation Tibial nerve (took ace wrap and brace off patient).

63.      On March 9, 2013 at approximately 1900, the nursing staff at Defendant SASMC repositioned Plaintiff Blatchley and called Defendant Youngblood to notify him of changes in CMS and compartment syndrome assessment, discussed decreased sensation, pt. ongoing pain issues, N/T, appearance of deformity in patients left ankle, patients low grade fever.

64.      Based upon information and belief, during the same phone call on March 9, 2013 at approximately 1900, Defendant Youngblood ordered a CBC in a.m., increased OxyContin CR, take down dressing, and continue to monitor.

65.      On March 9, 2013 at approximately 2030 Defendant Youngblood was called by nursing staff at Defendant SASMC regarding Plaintiff Blatchley's decreased sensation in the left foot.

66.      On March 9, 2013 at approximately 1900, on assessment at the same time, it was noted that Plaintiff Blatchley had +3 pitting edema, pain 7/10, and weak dorsi/plantar flex 0/1 in left ankle/toes.

67.      Based upon information and belief, during the same phone call on March 9, 2013 at approximately 2030, Defendant Youngblood communicated that he was aware of the pain

issue, may consider a left ankle X-ray series in the morning, would obtain CBC in the morning, and increase OxyContin.

68.     On March 9, 2013, Plaintiff Blatchley had signs of compartment syndrome.

69.     On March 9, 2013, Plaintiff Blatchley had symptoms of compartment syndrome.

70.     On March 9, 2013, Plaintiff Blatchley had compartment syndrome.

71.     On March 10, 2013 at approximately 0000, Plaintiff Blatchley's left lower extremity was assessed by the nursing staff at Defendant SASMC as warm, pink, edema 3+, pulse weak, +NT, decreased sensation peroneal  and decreased sensation Tibial nerve (took ace wrap and brace off patient. Repositioned patient, called PA Cameron Youngblood to notify him of changes in CMS and compartment syndrome assessment. Discussed decreased sensation, pt. ongoing pain issues, N/T, appearance of deformity in patients left ankle, patients low grade fever. Orders received for CBC in Am, increased OxyContin CR, take down dressing. Continue to monitor) dors:ankle 0/5 dors: toes 0/5, plantar:ankle 1/5 plantar:toes 1/5.

72.     On March 10, 2013 at approximately 0353, Plaintiff Blatchley's left lower extremity was assessed by the nursing staff at Defendant SASMC as warm, pink, edema 3+, pulse weak, +NT, decreased sensation peroneal  and decreased sensation Tibial nerve (took ace wrap and brace off patient. Repositioned pt. Called PA Cameron Youngblood to notify him of changes in CMS and compartment syndrome assessment. Discussed decreased sensation, pt. ongoing pain issues, N/T, appearance of deformity in patients left ankle, patients low grade fever. Orders received for CBC in Am, increased OxyContin CR, take down dressing. Continue to monitor) dors:ankle 0/5 dors: toes 0/5, plantar:ankle 1/5 plantar:toes 1/5.

73.     On March 10, 2013 at approximately 0800, Plaintiff Blatchley's left lower extremity was assessed by the nursing staff at Defendant SASMC as pain level  7, warm, pink, edema 3+, pulse weak, +NT, decreased sensation peroneal  and decreased sensation tibial nerve dors:ankle 0/5 dors: toes 0/5, plantar:ankle 0/5 plantar:toes 0/5.

74.     On March 10, 2013 at approximately 0900, the nursing staff at Defendant SASMC paged Defendant Youngblood because Plaintiff Blatchley was unable to wiggle toes on left foot, there was significant swelling and no pedal pulse by Doppler and he didn't correctly report any tactile stimulation on sensation assessment.

75.     On March 10, 2013 at approximately 0900, the nursing staff at Defendant SASMC requested that a licensed independent practioner see Plaintiff Blatchley.

76.     Based upon information and belief at 1000, a left lower extremity duplex ultrasound, Left knee AP & Lat x-ray were ordered by Defendant Youngblood.

77.     On March 10, 2013, at approximately 1000, physical therapy noted that Plaintiff Blatchley had multiple blisters and moderate swelling in his left lower extremity.  It was also noted that Plaintiff Blatchley was unable to feel any light or deep pressure to his left foot, he was able to feel cold water, but with a delayed response.

78.     On March 10, 2013 at approximately 1000, physical therapy noted that the nursing staff of Defendant SASMC and Defendant Youngblood were aware of Plaintiff Blatchley's condition and that the plan was for Defendant Cunningham to come and check on Plaintiff Blatchley.

79.     On March 10, 2013 at approximately 1012, Defendant Youngblood ordered a duplex ultrasound due to Plaintiff Blatchley's swelling.

80.      On March 10, 2013 at approximately 1012, Defendant Youngblood noted on examination of Plaintiff Blatchley's left lower extremity, moderate soft tissue swelling with maturing facture blisters, skin intact, dense hypothesias and dysthesias however can feel light tight touch throughout whole foot/LE, decreased motor, no obvious foot drop, tending to hold foot in neutral position but little or no active/passive DF/PF, +1 pretibial edema, toes pink and warm with good cap refill.

81.      On March 10, 2013 at approximately 1100, a wound assessment was done and noted large fracture blisters on Plaintiff Blatchley's left lower medial leg.

82.      On March 10, 2013 at approximately 1200, an assessment of Plaintiff Blatchley's left lower extremity noted sensation numbness left pedal pulse by Doppler.

83.      On March 10, 2013 at approximately 1212, Plaintiff Blatchley's left ankle X-ray revealed diffuse soft tissue swelling, no change in the cuboid fixation.

84.      On March 10, 2013 at 1224, the Doppler ultrasound done on Plaintiff Blatchley revealed no evidence of deep venous thrombosis.

85.      On March 10, 2013, based upon information and belief at approximately 1445, Defendant Cunningham evaluated Plaintiff Blatchley.

86.      On March 10, 2013 at 1601, Plaintiff Blatchley's left lower extremity was assessed by the nursing staff at Defendant SASMC as warm, pink, edema 3+, pulse weak, +NT, decreased sensation peroneal and decreased sensation Tibial nerve dors:ankle 0/5 dors: toes 0/5, plantar:ankle 0/5 plantar:toes 0/5.

87.      On March 10, 2013 at 1745, Defendant Cunningham noted that Plaintiff Blatchley had pain in left knee which had been severe, that the patient was somnolent but

communicative and that on examination his left lower extremity had moderate swelling, compartments not tight.

88.       On March 10, 2013, at approximately 1920, Defendant Cunningham ordered an AP & Lat left ankle x-ray.

89.       On March 10, 2013 at approximately 2000, Plaintiff Blatchley's left lower extremity was assessed by the nursing staff at Defendant SASMC as pain level 8, warm, pink, edema 3+, pulse weak, +NT, decreased sensation peroneal  and decreased sensation tibial nerve dors:ankle 0/5 dors: toes 0/5, plantar:ankle 0/5 plantar:toes 0/5.

90.       On March 10, 2013, Plaintiff Blatchley had signs of compartment syndrome.

91.       On March 10, 2013, Plaintiff Blatchley had symptoms of compartment syndrome.

92.       On March 10, 2013, Plaintiff Blatchley had compartment syndrome.

93.       On March 11, 2013 at approximately 0000, Plaintiff Blatchley's left lower extremity was assessed by the nursing staff at Defendant SASMC as warm, pink, edema 3+, pulse weak, +NT, decreased sensation peroneal and decreased sensation tibial nerve dors: ankle 0/5 dors: toes 0/5, plantar: ankle 0/5 plantar: toes 0/5; CMS - Left pedal pulse by Doppler, weak by palpation.

94.       On March 11, 2013 at approximately 0400, Plaintiff Blatchley's left lower extremity was assessed by the nursing staff at Defendant SASMC as warm, pink, edema 3+, pulse weak, +NT, decreased sensation peroneal and decreased sensation Tibial nerve dors: ankle 0/5 dors: toes 0/5, plantar: ankle 0.5/5 plantar: toes 0/5; CMS- Left pedal pulse by Doppler, weak by palpation, minimal movement left ankle.

95.     On March 11, 2013 at approximately 0752, Plaintiff Blatchley's left lower extremity was assessed by the nursing staff at Defendant SASMC as pain level 8, warm, pink, edema 3+, pulse weak, +NT, decreased sensation peroneal and decreased sensation tibial nerve dors: ankle 0/5 dors: toes 0/5, plantar: ankle 0/5 plantar: toes 0/5, CMS- Left pedal pulse by Doppler, weak by palpation, minimal movement left ankle.

96.     On March 11, 2013 at approximately 1130, Defendant Youngblood was called by staff from Defendant SASMC regarding Plaintiff Blatchley's temperature of 102 and red/blistered/painful lower left extremity.

97.     Based upon information and belief staff at SASMC was instructed to contact Defendant Cain regarding Plaintiff Blatchley's condition.

98.     On March 11, 2013 at approximately 1152, Plaintiff Blatchley's left lower extremity was assessed by the nursing staff at Defendant SASMC warm, pink, edema 3+, pulse weak, +NT, decreased sensation peroneal and decreased sensation tibial nerve dors: ankle 0/5 dors: toes 0/5, plantar: ankle 0/5 plantar: toes 0/5; CMS- Left pedal pulse by Doppler, weak by palpation, no movement left ankle.

99.     On March 11, 2013 at approximately 1210, Defendant Cain was telephoned regarding Plaintiff Blatchley's temperature of 102 and his red/blistered/painful left lower extremity.

100.    Based upon information and belief, during this call, it was reported to Defendant Cain that Tylenol was given and the temperature was down to 99.5 and that Plaintiff Blatchley demonstrated no strength to left toes and ankle.

101.     Based upon information and belief during this call, the staff at Defendant SASMC requested that a licensed independent practioner see Plaintiff Blatchley and assess his left lower extremity.

102.     Based upon information and belief, a chest x-ray was ordered which was reported as normal at approximately 1245 on March 11, 2013.

103.     On March 11, 2013 at approximately 1552, Plaintiff Blatchley's left lower extremity was assessed by the nursing staff at Defendant SASMC as warm, pink, edema 3+, pulse weak, +NT, decreased sensation peroneal and decreased sensation tibial nerve dors: ankle 0/5 dors: toes 0/5, plantar: ankle 0/5 plantar: toes 0/5; CMS- Left pedal pulse by Doppler, weak by palpation, no movement left ankle.

104.     On March 11, 2013 at approximately 1709, Defendant Cain was called by the staff at Defendant SASMC regarding Plaintiff Blatchley's continued redness and swelling, uncontrolled pain throughout shift, increased heat, low grade temp, no strength to left lower extremity and pulses by Doppler only.

105.     Based upon information and belief, during this call on March 11, 2013 at 1709, staff at Defendant SASMC requested that a licensed independent practioner come and evaluate Plaintiff Blatchley since no one had come and seen the patient that day

106.     At approximately 1800 on March 11, 2013, orthopedics was asked to evaluate Plaintiff Blatchley by Defendant Cain for increased erythema LLE (mx FX blisters, tight to palp, unable to DF or PF foot or toes, decreased sensation and pale skin).

107.     During the evaluation on March 11, 2013 at approximately 1800, based upon information and belief the pressures in the compartment of Plaintiff Blatchley's lower left extremity measured Lat. 75 mm, Ant. 45 mm, Deep Posterior 52 mm.

108.     On March 11, 2013, at approximately 1839, Defendant Janes was notified and Plaintiff Blatchley was ordered to the operative room for emergent fasciotomy.

109.     On March 11, 2013 at approximately 2051, Plaintiff Blatchley underwent a four compartment fasciotomy, debridement, and placement of wound vac. by Defendant Janes and assisted by Brian Davis PA-C.

110.     On March 11, 2013, Plaintiff Blatchley had signs of compartment syndrome.

111.     On March 11, 2013, Plaintiff Blatchley had symptoms of compartment syndrome.

112.     On March 11, 2013, Plaintiff Blatchley had compartment syndrome.

113.     On March 13, 2013, Plaintiff Blatchley returned to the operative room for a removal of the wound vac, re-debridement of the left leg and irrigation and replacement of wound vac.

114.     On March 16, 2013, Plaintiff Blatchley returned to the operative room for removal of wound vac, further debridement of the anterior compartment and deep posterior compartment, irrigation, replacement of wound vac, arthrotomy, irrigation and drain of left knee.

115.     On March 20, 2013, Plaintiff Blatchley returned to the operative room for irrigation and debridement including skin, subcutaneous tissue, muscle and bone of the left leg, skin grafting and application of a wound vac.

116.     On April 8, 2013, Plaintiff Blatchley returned to the operative room for wound dehiscence with exposed hardware, lateral left leg proximally with failure of medial wound as well.

117.     Plaintiff Blatchley was discharged from Defendant SASMC on April 15, 2013.

118.     Plaintiff Blatchley returned to New Zealand to receive persistent follow up care and treatment.

## IV.  FIRST CLAIM FOR RELIEF
### (Medical Negligence – Richard Cunningham, M.D.)

119.     Plaintiffs incorporate Paragraphs 1 through 118 herein by reference.

120.     Defendant Cunningham was negligent in his care and treatment of Plaintiff Blatchley, and as a result, Plaintiff Blatchley suffered severe, permanent, injuries and damages, as more fully described below.

121.     With respect to his care and treatment of Plaintiff Blatchley, Defendant Cunningham owed a duty to exercise that degree of care, skill, caution, diligence and foresight exercised by and expected of physicians in similar situations.

122.     Standard of care required Defendant Cunningham recognize Plaintiff Blatchley had warning signs and symptoms of compartment syndrome.  He deviated from the standard of care and was negligent in his care and treatment of Plaintiff Blatchley by:

    a.  Failing to timely and appropriately evaluate, diagnose, monitor, supervise, care, and treat Plaintiff Blatchley's medical condition;

    b.  Failing to timely and appropriately respond to Plaintiff Blatchley's signs and symptoms of compartment syndrome;

  c. Failing to properly address concerns made by nursing staff at Defendant SASMC to made responsive orders;

  d. Failing to conduct an adequate post-operative evaluation(s) of Plaintiff Blatchley; and

  e. Failing to adequately and timely intervene and perform emergent surgery on Plaintiff Blatchley.

123. As a direct and proximate result of the negligence of Defendant Cunningham, Plaintiff Blatchley has suffered injuries, damages, and losses as described herein, including but not limited to past and future medical expenses, loss of past and future income, loss of earning potential, loss of essential and home services, permanent physical impairment and disfigurement, pain and suffering, mental anguish, and emotional distress.

## V. SECOND CLAIM FOR RELIEF
### *(Vicarious Liability – Richard Cunningham, M.D.)*

124. Plaintiffs incorporate Paragraphs 1 through 123 herein by reference.

125. C.R.S. 12-36-106(5)(b)(I), requires in part, for physician assistants performing acts which constitute the practice of medicine, that "the act[s] shall not be performed except under the personal and responsible direction and supervision of a person licensed…to practice medicine…The board, by rule, may define what constitutes appropriate direction and supervision of a physician assistant."

126. Pursuant to 3 Colo. Code Regs. 713-7; the primary physician supervisor is responsible for the conduct of physician assistants.

127. At all relevant times, Defendant Cunningham, as a physician, supervised Defendant Cain.

128.     Standard of care required Defendant Cain to recognize Plaintiff Blatchley

had warning signs and symptoms of compartment syndrome.   With respect to his care and

treatment of Plaintiff Blatchley, Defendant Cain breached his duty and was negligent by:

    a.   Failing to timely and appropriately evaluate, diagnose, monitor,
supervise, care, and treat Plaintiff Blatchley's medical
condition;

    b.   Failing to timely and appropriately respond to Plaintiff
Blatchley's signs and symptoms of compartment syndrome;

    c.   Failing to properly address concerns made by nursing staff at
Defendant SASMC to made responsive orders;

    d.   Failing to conduct an adequate post-operative evaluation(s) of
Plaintiff Blatchley; and

    e.   Failing to adequately and timely intervene and perform
emergent surgery on Plaintiff Blatchley.

129.     Defendant Cunningham, is responsible by law for the negligence of

Defendant Cain and, therefore, for the injuries, damages and losses suffered by Plaintiff

Blatchley, as set forth above.

### VI.  THIRD CLAIM FOR RELIEF
*(Medical Negligence – Peter Janes, M.D.)*

130.     Plaintiffs incorporate Paragraphs 1 through 129 herein by reference.

131.     Defendant Janes was negligent in his care and treatment of Plaintiff

Blatchley, and as a result, Plaintiff Blatchley suffered severe, permanent, injuries and damages, as

more fully described below.

132.     With respect to his care and treatment of Plaintiff Blatchley, Defendant Janes owed a duty to exercise that degree of care, skill, caution, diligence and foresight exercised by and expected of physicians in similar situations.

133.     Standard of care required Defendant Janes to recognize Plaintiff Blatchley had warning signs and symptoms of compartment syndrome.  Defendant Janes, deviated from the standard of care and was negligent in his care and treatment of Plaintiff Blatchley by:

    a.  Failing to timely and appropriately evaluate, diagnose, monitor, supervise, care, and treat Plaintiff Blatchley's medical condition;

    b.  Failing to timely and appropriately respond to Plaintiff Blatchley's signs and symptoms of compartment syndrome;

    c.  Failing to properly address concerns made by nursing staff at Defendant SASMC to made responsive orders;

    d.  Failing to conduct an adequate post-operative evaluation(s) of Plaintiff Blatchley; and

    e.  Failing to adequately and timely intervene and perform emergent surgery on Plaintiff Blatchley.

134.     As a direct and proximate result of the negligence of Defendant Janes, Plaintiff Blatchley has suffered injuries, damages, and losses as described herein, including but not limited to past and future medical expenses, loss of income, loss of earning potential, loss of essential and home services, permanent physical impairment and disfigurement, pain and suffering, mental anguish, and emotional distress.

## VII.   FOURTH CLAIM FOR RELIEF
### *(Vicarious Liability – Peter Janes, M.D.)*

135.     Plaintiffs incorporate Paragraphs 1 through 134 herein by reference.

136.     C.R.S. 12-36-106(5)(b)(I), requires in part, for physician assistants performing acts which constitute the practice of medicine, that "the act[s] shall not be performed except under the personal and responsible direction and supervision of a person licensed…to practice medicine…The board, by rule, may define what constitutes appropriate direction and supervision of a physician assistant."

137.     Pursuant to 3 Colo. Code Regs. 713-7; the primary physician supervisor is responsible for the conduct of physician assistants.

138.     At all relevant times, Defendant Janes, as a physician, supervised Defendant Smith.

139.     Standard of care required Defendant Smith to recognize Plaintiff Blatchley had warning signs and symptoms of compartment syndrome.  With respect to his care and treatment of Plaintiff Blatchley, Defendant Smith breached his duty and was negligent by:

    a.  Failing to timely and appropriately evaluate, diagnose, monitor, supervise, care, and treat Plaintiff Blatchley's medical condition;

    b.  Failing to timely and appropriately respond to Plaintiff Blatchley's signs and symptoms of compartment syndrome;

    c.  Failing to properly address concerns made by nursing staff at Defendant SASMC to made responsive orders;

    d.  Failing to conduct an adequate post-operative evaluation(s) of Plaintiff Blatchley; and

    e.  Failing to adequately and timely intervene and perform emergent surgery on Plaintiff Blatchley.

140.     Defendant Janes, is responsible by law for the negligence of Defendant

Smith and, therefore, for the injuries, damages and losses suffered by Plaintiff Blatchley, as set

forth above.

## VIII.   FIFTH CLAIM FOR RELIEF
### *(Vicarious Liability – Todd William Peters, M.D.)*

141.     Plaintiffs incorporate Paragraphs 1 through 140 herein by reference.

142.     C.R.S. 12-36-106(5)(b)(I), requires in part, for physician assistants

performing acts which constitute the practice of medicine, that "the act[s] shall not be performed

except under the personal and responsible direction and supervision of a person licensed…to

practice medicine…The board, by rule, may define what constitutes appropriate direction and

supervision of a physician assistant."

143.     Pursuant to 3 Colo. Code Regs. 713-7; the primary physician supervisor is

responsible for the conduct of physician assistants.

144.     At all relevant times, Defendant Peters, as a physician, supervised Defendant

Youngblood.

145.     Standard of care required Defendant Youngblood to recognize Plaintiff

Blatchley had warning signs and symptoms of compartment syndrome.  With respect to his care

and treatment of Plaintiff Blatchley, Defendant Youngblood breached his duty and was negligent

by:

     a.   Failing to timely and appropriately evaluate, diagnose, monitor,
        supervise, care, and treat Plaintiff Blatchley's medical
        condition;

    b. Failing to timely and appropriately respond to Plaintiff Blatchley's signs and symptoms of compartment syndrome;

    c. Failing to properly address concerns made by nursing staff at Defendant SASMC to made responsive orders;

    d. Failing to conduct an adequate post-operative evaluation(s) of Plaintiff Blatchley; and

    e. Failing to adequately and timely intervene and perform emergent surgery on Plaintiff Blatchley.

146.    Defendant Peters is responsible by law for the negligence of Defendant Youngblood and, therefore, for the injuries, damages and losses suffered by Plaintiff Blatchley, as set forth above.

## IX.  SIXTH CLAIM FOR RELIEF
### (*Vicarious Liability* – Vail-Summit Orthopaedics)

147.    Plaintiffs incorporate by reference Paragraphs 1 through 146 of this Complaint as if fully set forth herein.

148.    Defendant Vail-Summit Orthopaedics is responsible by law for the acts and omissions of its employees, agents, officers and/or servants.

149.    At all times relevant, Defendant Cain, Youngblood and Smith were employees, servants, and/or agents of Defendant Vail-Summit Orthopaedics, acting within their course and scope of their employment and/or within their actual or apparent authority as agent.

150.    Standard of care required Defendants Cain, Smith, and Youngblood to recognize Plaintiff Blatchley had warning signs and symptoms of compartment syndrome.  With respect to their care and treatment of Plaintiff Blatchley, Defendants Cain, Smith and Youngblood breached their duty and was negligent by:

a. Failing to timely and appropriately evaluate, diagnose, monitor, supervise, care, and treat Plaintiff Blatchley's medical condition;

b. Failing to timely and appropriately respond to Plaintiff Blatchley's signs and symptoms of compartment syndrome;

c. Failing to properly address concerns made by nursing staff at Defendant SASMC to made responsive orders;

d. Failing to conduct an adequate post-operative evaluation(s) of Plaintiff Blatchley; and

e. Failing to adequately and timely intervene and perform emergent surgery on Plaintiff Blatchley.

151.     Defendant Vail Summit Orthopaedics is responsible by law for the negligence of Defendant Cain, Smith and Youngblood and, therefore, for the injuries, damages and losses suffered by Plaintiff Blatchley, as set forth above.

### X.  SEVENTH CLAIM FOR RELIEF
#### (Respondeat Superior – St. Anthony Summit Medical Center – "SASMC")

152.     Plaintiffs incorporate by reference Paragraphs 1 through 151 of this Complaint as if fully set forth herein.

153.     On or about March 5, 2013, Plaintiff Blatchley was under the care and treatment of nurses and other medical personnel employed by Defendant SASMC.

154.     Upon information and belief at all relevant times, these medical personnel, including nurses and other medical care providers, were employees, agents, officers and/or servants of Defendant SASMC, and were acting in the course and scope of their employment, office or authority.

155.     Defendant SASMC is responsible for the negligent acts and omissions of their employees, agents, officers, and/or servants.

156.     Defendant SASMC, acting through their employees, agents, officers, and/or servants, who were acting within the course and scope of their employment or within their authority, were negligent in their care and treatment of Plaintiff Blatchley, including, but not limited to, the following:

   a. Failing to provide timely and appropriate nursing care, treatment and diagnosis of Plaintiff Blatchley;

   b. Failing to properly and timely consult with appropriate medical professional regarding the care and treatment of Plaintiff Blatchley;

   c. Failing to ensure that Plaintiff Blatchley received timely and appropriate evaluation of his medical condition;

   d. Failing to take proper action by following their own policies and procedures to ensure that a licensed independent practioner evaluated and treated Plaintiff Blatchley's emergent medical condition; and

   e. Failing to utilize the chain of command policy to ensure that Plaintiff Blatchley received care and treatment for his emergent medical condition.

157.     Defendant Summit Medical Center is responsible by law for the negligence of its employees, agents, officers and/or servants, and, therefore, for the injuries, damages and losses suffered by Plaintiff Blatchley, as set forth above.

## XI.  EIGHTH CLAIM FOR RELIEF
### *(Negligence – Matthew Cain, PA-C)*

158.     Plaintiffs incorporate Paragraphs 1 through 157 herein by reference.

159.	At all relevant times, Defendant Cain was a physician assistant.

160.	At all relevant times, Plaintiff Blatchley was under the care and treatment of Defendant Cain.

161.	With respect to his care and treatment of Plaintiff Blatchley, Defendant Cain, owed a duty to exercise that degree of care, skill, caution, diligence and foresight exercised by and expected of physician assistants in similar situations.

162.	Standard of care required Defendant Cain to recognize Plaintiff Blatchley had warning signs and symptoms of compartment syndrome.  Defendant Cain, deviated from the standard of care and was negligent in his care and treatment of Plaintiff Blatchley by:

 a.	Failing to timely and appropriately evaluate, diagnose, monitor, supervise, care, and treat Plaintiff Blatchley's medical condition;

 b.	Failing to timely and appropriately respond to Plaintiff Blatchley's signs and symptoms of compartment syndrome;

 c.	Failing to conduct an adequate post-operative evaluation(s) of Plaintiff Blatchley; and

 d.	Failing to adequately and timely intervene and perform emergent surgery on Plaintiff Blatchley.

163.	As a direct and proximate result of the negligence of Defendant Cain Plaintiff Blatchley has suffered injuries, damages, and losses as described above.

## XII.  NINTH CLAIM FOR RELIEF
### (Negligence – Timothy Smith, PA-C)

164.	Plaintiffs incorporate Paragraphs 1 through 163 herein by reference.

165.	At all relevant times, Defendant Smith was a physician assistant.

166.     At all relevant times, Plaintiff Blatchley was under the care and treatment of Defendant Smith.

167.     With respect to his care and treatment of Plaintiff Blatchley, Defendant Smith, owed a duty to exercise that degree of care, skill, caution, diligence and foresight exercised by and expected of physician assistants in similar situations.

168.     Standard of care required Defendant Smith to recognize Plaintiff Blatchley had warning signs and symptoms of compartment syndrome.  Defendant Smith, deviated from the standard of care and was negligent in his care and treatment of Plaintiff Blatchley by:

   a.  Failing to timely and appropriately evaluate, diagnose, monitor, supervise, care, and treat Plaintiff Blatchley's medical condition;

   b.  Failing to timely and appropriately respond to Plaintiff Blatchley's signs and symptoms of compartment syndrome;

   c.  Failing to conduct an adequate post-operative evaluation(s) of Plaintiff Blatchley; and

   d.  Failing to adequately and timely intervene and perform emergent surgery on Plaintiff Blatchley.

169.     As a direct and proximate result of the negligence of Defendant Smith Plaintiff Blatchley has suffered injuries, damages, and losses as described above.

### XIII.   TENTH CLAIM FOR RELIEF
*(Negligence – Cameron Youngblood, PA-C)*

170.     Plaintiffs incorporates Paragraphs 1 through 169 herein by reference.

171.     At all relevant times, Defendant Youngblood was a physician assistant.

172.     At all relevant times, Plaintiff Blatchley was under the care and treatment of Defendant Youngblood.

173.     With respect to his care and treatment of Plaintiff Blatchley, Defendant Youngblood, owed a duty to exercise that degree of care, skill, caution, diligence and foresight exercised by and expected of physician assistants in similar situations.

174.     Standard of care required Defendant Youngblood to recognize Plaintiff Blatchley had warning signs and symptoms of compartment syndrome.  Defendant Youngblood, deviated from the standard of care and was negligent in his care and treatment of Plaintiff Blatchley by:

   a.  Failing to timely and appropriately evaluate, diagnose, monitor, supervise, care, and treat Plaintiff Blatchley's medical condition;

   b.  Failing to timely and appropriately respond to Plaintiff Blatchley's signs and symptoms of compartment syndrome;

   c.  Failing to conduct an adequate post-operative evaluation(s) of Plaintiff Blatchley; and

   d.  Failing to adequately and timely intervene and perform emergent surgery on Plaintiff Blatchley.

175.     As a direct and proximate result of the negligence of Defendant Youngblood Plaintiff Blatchley has suffered injuries, damages, and losses as described above.

## XIV.  ELEVENTH CLAIM FOR RELIEF
### (Loss of Consortium – Delfina Blatchley)

176.     Plaintiffs incorporate by reference paragraphs 1 through 175 of this Complaint herein by reference as if fully set forth herein.

177.     At all relevant times, Plaintiffs Jody Blatchley and Delfina Blatchley were married and living together as husband and wife.

178.     As a direct and proximate result of the injuries suffered by her husband, Plaintiff Blatchley, Delfina Blatchley has suffered a loss of society, companionship, comfort, and consortium of her husband.

WHEREFORE, Plaintiffs respectfully pray for compensatory damages in their favor and against Defendants in an amount to be determined by the trier of fact, interest from the date of filing, pre-judgment and post-judgment interest as allowed by law, witness fees, filing fees, deposition expenses, attorney's fees, and for such other and further relief as the Court may deem appropriate and just including all costs.

### PLAINTIFFS DEMAND A TRIAL BY JURY

Respectfully submitted this 4th day of March, 2015.

LEVENTHAL & PUGA, P.C.

*A duly signed original is available for inspection at the offices of Leventhal & Puga, P.C.*

By:     *Nicholas Temming*
        Jim Leventhal, #5815
        Molly Greenblatt Welch, #36252
        Nick Temming, #41127

*Attorneys for Plaintiff*