**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 15-cv-00460-WYD-NYW

JODY BLATCHLEY, and
DELFINA BLATCHLEY,

      Plaintiffs,

v.

RICHARD CUNNINGHAM, M.D.,
PETER JANES, M.D.,
TODD WILLIAM PETERS, M.D.,
MATTHEW CAIN, PA-C,
TIMOTHY SMITH, PA-C,
CAMERON YOUNGBLOOD, PA-C,
ST. ANTHONY SUMMIT MEDICAL CENTER, and
VAIL-SUMMIT ORTHOPAEDICS, P.C.,

      Defendants.

---

## ORDER

---

Magistrate Judge Nina Y. Wang

      This matter is before the court on Defendants' Motion to Conduct *Ex Parte* Interviews

With Plaintiff's Medical Providers and Request for Expedited Ruling (the "Motion").  [#83, filed

September 10, 2015].  The matter was referred to this Magistrate Judge pursuant to the Order

Referring Case dated March 5, 2015 [#4] and the memorandum dated September 10, 2015 [#83].

For the reasons stated below, the Motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

      Plaintiffs Jody and Delfina Blatchley filed their Complaint on March 4, 2015, asserting

eleven tort-based claims for negligence, vicarious liability, respondeat superior, and loss of

consortium[1] arising out of a March 5, 2013 snowboarding accident involving Jody Blatchley ("Mr. Blatchley") at Keystone Resort in Summit County, Colorado.  [#1 at ¶¶ 18, 120-123, 125-129, 131-134, 136-140, 142-146, 148-151, 153-157, 159-163, 165-169, 171-175, 177-178].  Mr. Blatchley underwent surgery soon after the accident and subsequently developed compartment syndrome in his left leg.[2]  *See, e.g.* [#1 at ¶¶ 23, 68-70].  Plaintiffs allege that Defendants were negligent in the care of Mr. Blatchley by failing to properly monitor, evaluate, and treat him with respect to the compartment syndrome, which has left Plaintiff with nerve pain and decreased function of his left leg.  *See generally* [#1; #62 at 3].

The following reflects the sequence of care received by Mr. Blatchley, as set out in Defendants' instant Motion, which is not refuted by Plaintiffs' Response.  *Compare* [#83] *with* [#89].  Mr. Blatchley was initially examined by Dr. Claude L. Lavallee at St. Anthony Keystone Medical Clinic, where x-rays of Mr. Blatchley's right ankle indicated a comminuted calcaneal fracture and x-rays of his left knee indicated a comminuted fracture of the tibial plateau.  [#1 at ¶ 19; #83 at 2].  These x-rays were interpreted by radiologist Dr. Craig Stewart.  [#83 at 2].  Plaintiff was thereafter transferred to Defendant St. Anthony Summit Medical Center, where he was evaluated by emergency room physician Dr. Mark Doucett.  Dr. Doucett ordered a CT of Plaintiff's lower right extremity, which showed a severely comminuted, depressed and displaced calcaneal fracture.  [#83 at 3].  Radiologists Dr. Christopher Leoni and Dr. Craig Stewart interpreted these x-rays.  [*Id.*]  Defendant Richard Cunningham, M.D. evaluated Plaintiff at this

---

[1] At all times relevant to the Complaint Jody and Delfina Blatchley were married and living together as husband and wife.  [#1 at ¶ 177].

[2] "Compartment syndrome occurs when pressure builds up inside an enclosed space in the body and usually results from swelling after an injury. The pressure impedes the flow of blood to and from affected tissues."  [#83 at 4].

time, along with Dr. Doucette, and Defendant Cunningham operated on Mr. Blatchley's left tibial fracture during the evening of March 5, 2013. [*Id.*]  Fluoroscopic imaging was performed during the surgery and interpreted by radiologist Dr. Charles Norton. [*Id.*]  Anesthesiologist Dr. Anthony Brocato administered anesthesia care to the Plaintiff. [*Id.*]

Following surgery, Defendant Cunningham contacted his partner, Dr. John Elton, a specialist in foot and ankle injuries, to treat Mr. Blatchley's right calcaneus fracture. On March 7, 2013, Dr. Elton performed an open reduction internal fixation of the right calcaneus fracture. [#83 at 3].  Anesthesiologists Dr. Brocato and Dr. Robert Engelhart provided anesthesia care during that surgery. [*Id.*]

Following his March 5, 2013 surgery, Mr. Blatchley's injuries were evaluated and treated by physician's assistants ("PA") employed by Defendant Cunningham and Dr. Elton's medical practice, Defendant Vail-Summit Orthopaedics, P.C. [#83 at 3].  Mary Bryan and Brian Davis were two PAs who treated Plaintiff. [*Id.*]

On March 10, 2013, Mr. Blatchley underwent additional radiographic studies, including an x-ray of his left knee, which were interpreted by radiologist Dr. Robert Liebold. [#83 at 4]. A March 29, 2013 x-ray of Plaintiff's knee was interpreted by radiologist Dr. Steven Ross. [*Id.*]

On March 11, 2013, Defendant Peter Janes operated on Plaintiff as to the diagnosis of compartment syndrome of the left leg. [#83 at 4].  Anesthesiologist Dr. Kathleen Jenkins provided anesthesia care during that surgery. [*Id.*]  At that time, tissue was removed from Mr. Blatchley's leg and sent to pathologist Dr. Stephen Worth for evaluation. [*Id.*]  Defendant Janes performed a debridement on March 13, 2013, after which tissue was sent to and evaluated by pathologist Dr. Mary Kenny-Moynihan. [*Id.*]

3

Between the March 5, 2013 surgery performed by Defendant Cunningham and the March 11, 2013 surgery performed by Defendant Janes, Plaintiff was cared for and evaluated by a number of nurses who were employed by Defendant St. Anthony Summit Medical Center.  [#83 at 4].  On April 15, 2013, Mr. Blatchley was transferred to a rehabilitation facility in his home country of New Zealand, where the injuries to his left leg and right heel were managed by Dr. Mark Clatworthy, Dr. Robert Orec, and Dr. Mike Anderson.  [*Id.* at 4-5].

Defendants filed the pending Motion on September 10, 2015, seeking leave to conduct *ex parte* interviews with medical providers whom Defendants "consulted with," and whom Defendants argue pose "essentially" no risk of divulging residually privileged information.  [#83 at 5].  Defendants also request an expedited ruling by the court in advance of Plaintiffs' depositions that are scheduled for September 29 and 30, 2015.  Defendants identify the following providers whom they seek to interview:

**Emergency Department physicians:** Dr. Lavallee and Dr. Doucette

**Anesthesiologists:** Dr. Brocato, Dr. Engelhart, and Dr. Jenkins

**Radiologists:** Dr. Stewart, Dr. Leoni, Dr. Leibold, Dr. Norton, and Dr. Ross

**Pathologists:** Dr. Worth and Dr. Kenny-Moynihan

**Employees of Defendant Vail Summit Orthopaedics:** Dr. Elton, PA Bryan, and PA Davis

**Nurses at Defendant St. Anthony Summit Medical Center:** Renei Bohrer, Ashley Allen, Steve Plante, Annadane Dayton, Della Crone, Tara Styck, Doris Welch, Karen Boardley, Jacqueline Benavides, Jennifer Yoakum, and Katherine Conkle

**New Zealand Treating physicians**: Dr. Clatworthy, Dr. Orec, and Dr. Anderson

On September 15, 2015, to accommodate the request for an expedited ruling, this court

ordered Plaintiffs to file a response by September 18, 2015, and directed that no reply would be permitted without leave of court.  [#87].  Plaintiffs filed a timely Response.  [#89].

## ANALYSIS

Under Colorado law, communications between physicians and their patients are generally privileged.  "Protecting these communications from disclosure promotes 'effective diagnosis and treatment of illness by protecting the patient from the embarrassment and humiliation' that could result from divulging her medical information."  *Reutter v. Weber*, 179 P.3d 977, 980 (Colo. 2007) (quoting *Alcon v. Spicer,* 113 P.3d 735, 738 (Colo. 2005)).  To "encourage confidence and to preserve it inviolate," Colorado Revised Statute section 13-90-107(1)(d) prohibits a physician, surgeon, or registered professional nurse duly authorized to practice his or her profession pursuant to the laws of Colorado or any other state from serving as a witness "as to any information acquired in attending the patient that was necessary to enable him or her to prescribe or act for the patient," without the consent of that patient.  Two exceptions to this rule are relevant to the instant Motion.  First, the privilege does not prevent a medical provider who is sued for malpractice from disclosing confidential medical information concerning the subject matter of the plaintiff's lawsuit.  Colo. Rev. Stat. § 13-90-107(1)(d)(i).  Second, the statutory privilege does not apply to a "physician, surgeon, or registered professional nurse who was in consultation with a physician, surgeon, or registered professional nurse being sued . . . on the case out of which the said suit arises."  Colo. Rev. Stat. 13-90-107(1)(d)(ii).  Plaintiffs bear the burden of establishing applicability of the physician-patient privilege (*Alcon*, 113 P.3d at 739), and "[i]ssues arising in the course of pretrial discovery are committed to the discretion of the trial court."  *Reutter*, 179 P.3d at 984 (citation omitted).

I.      **New Zealand Treating Physicians**

Plaintiffs argue the court should deny Defendants' request to conduct *ex parte* meetings with Drs. Clatworthy, Orec, and Anderson because these physicians are not consulting physicians within the meaning of the statute.  [#89 at 3].  [law]  The court agrees.  In *Reutter*, "consultation" was defined to include "both the sued provider and those who acted in consultation with her."  179 P.3d 981.  In other words, the statutory exception applies to the medical providers who played "a role in the patient's treatment" in the sense of lending advice, knowledge, and special skills to the defendant physician in the course of action that constitutes the malpractice claim.  *Id.*  The exception does not extend to physicians "acting independently and successively on the same injury or illness…"  *Id.* (quoting *Brown v. Guiter,* 256 Iowa 671 (1964)).  *See also Hogue v. Massa,* 80 S.D. 319 (1963) (distinguishing between consultation that occurred during the time the defendant doctor ministered to patient and consultation that occurs after the patient has been treated those doctors).

There is no indication that the New Zealand physicians ever discussed Plaintiff's condition with Defendants, or were otherwise involved in his treatment immediately following the March 5, 2013 accident.  On this basis alone the Motion is denied as to the New Zealand physicians.  In addition, the Parties do not address, and therefore the court only notes that it is uncertain of, the applicability of the Colorado physician-patient privilege to care undertaken in an entirely different sovereign nation or whether such *ex parte* communications would be permissible under New Zealand law.

II.     **United States Physicians and Medical Providers**

As to the remaining physicians and medical providers ("American Providers"), Plaintiffs

do not argue that these professionals were not "in consultation with" Defendants Cunningham or Janes, or that they otherwise fall outside of the exception found in section 13-90-107(1)(d)(ii). Instead, Plaintiffs argue that the requested *ex parte* meetings will result in "great unfairness," and encourage the court to consider the purposes of pretrial discovery, including (1) eliminating surprise at trial; (2) discovering all relevant evidence; (3) simplifying the issues; and (4) promoting the expeditious settlement of cases.  [#89 at 4-5 (citing *Camp Bird Colorado Inc. v. Bd. of County Comm'rs*, 215 P.3d 1277, 1291 (Colo. App. 2009)].

As a preliminary matter, I find that the statutory exception contained in section 13-90-107(1)(d)(ii) applies to the information relevant to this lawsuit that the American Providers acquired while treating Mr. Blatchley.   Unlike the New Zealand physicians, the American Providers attended to and/or helped Defendants treat Plaintiff between his leg and foot surgery on March 5, 2013 and compartment syndrome surgery on March 11, 2013 as part of a unified course of treatment.  *See Reutter*, 179 P.3d at 981 (recognizing that a "unified course of treatment" contemplates multiple medical providers working collectively and collaboratively to care for a patient).   Drs. Lavallee and Doucette were responsible for the initial evaluation of Plaintiff's injuries on March 5, 2013.   Drs. Stewart, Leoni, Leibold, Norton, and Ross are radiologists who reviewed and interpreted Plaintiff's x-rays.   Drs. Brocato, Engelhart, and Jenkins administered anesthesia care for Plaintiff during his two surgeries.   Drs. Worth and Kenny-Moynihan assessed Plaintiff's tissues during this time.  Finally, Dr. Elton, PA Bryan, PA Davis, Renei Bohrer, Ashley Allen, Steve Plante, Annadane Dayton, Della Crone, Tara Styck, Doris Welch, Karen Boardley, Jacqueline Benavides, Jennifer Yoakum and Katherine Conkle observed and cared for Plaintiff at various points between March 6 and March 11, 2013.   In

finding that section 13-90-107(1)(d)(ii) applies to the information obtained by these individuals, I decline to consider Defendants' arguments regarding waiver.

Next, Plaintiffs argue that the *ex parte* meetings could result in inadvertent disclosure of Mr. Blatchley's residually privileged health information.  [#89 at 8-9].  Plaintiffs are correct that the court should guard against the disclosure of residually privileged information, and should allow the plaintiff to attend interviews with medical providers if there is a high risk that residually privileged information will be divulged.  *See Reutter*, 179 P.3d at 982; *see also Samms v. District Court*, 908 P.2d 520 (Colo. 1995).  However, no such risk is present here.  Despite Plaintiffs' assertion to the contrary, the four-page, eight-entry privilege log for Mr. Blatchley's Rule 26(a)(1) initial disclosures attached to their Response does not support the assertion that the American Providers possess residually privileged information or are likely to divulge same. [#89-2].  It appears that only four pages could potentially contain any residual health information. [*Id.*]  More likely, Mr. Blatchley gave limited medical history (as suggested by the descriptions in the privilege logs) that does not pose a significant risk.

The conclusion that the medical care providers likely do not have significant residual health information is supported by the fact that the Blatchleys are residents of New Zealand and Mr. Blatchley was visiting Keystone Resort in his capacity as Coach of the New Zealand Olympic Snowboard Team.  [#1 at ¶¶ 6-7, 17].  As in *Reutter*, the American Providers were "'in consultation with' each other in a unified course of treatment—a course of treatment that forms the basis of the malpractice action."  179 P.3d at 982.  The *Reutter* court observed that in such a situation, "the risk that residually privileged information will be divulged is relatively low"; as opposed to in *Samms* where twenty medical providers administered separate treatments over

what appeared to have been a significant period of time, and that court recognized the plaintiff's interest in protecting "privileged information that was not relevant to the malpractice action." *Id.* at 983 (citing *Samms*, 908 P.2d at 525-26).

Finally, the court disagrees that allowing *ex parte* meetings would frustrate the purpose of pretrial discovery. Each of the factors cited by Plaintiffs is promoted by allowing Defendants to meet with the American Providers. Plaintiffs cite *Samms* for the proposition that informal communications between a defense attorney and non-party physicians may promote the purposes of pre-trial discovery only where the court "assur[es] that both parties have access to an informal, efficient, and cost-effective method for discovering facts relevant to the proceedings." [#89 at 5 (quoting *Samms,* 908 P.2d at 526)]. However, for reasons addressed above, *Samms* is distinguishable from this case with respect to the privileged information at issue, and Plaintiffs cite no other case law to support that the court is responsible for facilitating equal, informal access to witnesses.

Furthermore, with the exception of radiologists Drs. Leoni, Stewart, Norton, and Liebold, and pathologists Drs. Worth and Kenny-Moynihan, the American Providers were employed by Defendants St. Anthony Summit Medical Center and/or Vail-Summit Orthopaedics at all times relevant to the Complaint. [*See* #89 at 2]. It is reasonable to believe that counsel for St. Anthony's Medical Center and Vail Orthopaedics may represent these additional health care providers in any upcoming deposition. Requiring all communications between such employees and counsel for the organizations to include Plaintiffs or requiring all of these medical providers to obtain separate counsel simply to have protected communications is onerous, and does not facilitate efficient or cost-effective methods of discovery.

9

Finally, such a requirement is not only impractical but in contravention of Rule 1 of the Federal Rules of Civil Procedure, which requires the court and all parties to construe and administer such rules to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.  The Federal Rules of Civil Procedure neither preclude *ex parte* interviews with these additional medical care providers nor require that such interviews be held only in the presence of Plaintiff's counsel.  The conclusion reached in this Order does not alter the position the Parties would have held under any other circumstance, and the matter is before the court only as a result of the question regarding residually privileged health information.  Nothing prevents Plaintiffs from seeking to depose these individuals; and indeed, Plaintiffs represent they have taken such steps with respect to "several of these nurses," but without success.  [#89 at 6].

To the extent Plaintiffs contend their efforts to engage in discovery with the American Providers have been thwarted by Defendants, or otherwise argue they are prejudiced by the occurrence of the requested meetings, Plaintiffs should squarely raise that issue to the court through the informal dispute process, and if it remains unresolved, through a formal discovery motion—not through the back door on this instant motion.

Accordingly,  IT IS ORDERED that the Motion [#83] is GRANTED IN PART and DENIED IN PART.

DATED: September 24, 2015                    BY THE COURT:


                                             s/ Nina Y. Wang
                                             United States Magistrate Judge