**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 15-cv-00460-WYD-NYW

JODY BLATCHLEY, and
DELFINA BLATCHLEY,

    Plaintiffs,

v.

RICHARD CUNNINGHAM, M.D.,
PETER JANES, M.D.,
MATTHEW CAIN, PA-C,
TIMOTHY SMITH, PA-C,
CAMERON YOUNGBLOOD, PA-C,
ST. ANTHONY SUMMIT MEDICAL CENTER,
VAIL-SUMMIT ORTHOPAEDICS, P.C., and
GREGORY POULTER, M.D.,

    Defendants.

---

**ORDER OF UNITED STATES MAGISTRATE JUDGE**

---

Magistrate Judge Nina Y. Wang

This matter is before the court on Defendant St. Anthony Summit Medical Center's ("St. Anthony Summit") Motion for Protective Order Regarding Privileged Documents Identified in Defendant's Amended Privilege Log for Second Supplemental Disclosures Pursuant to F.R.C.P. 26(A)(1) ("Motion for Protective Order") [#157, filed January 28, 2016]. Also before the court is Plaintiffs' Motion to Amend the Civil Scheduling Order to Expand the Discovery Limitations to "Per Party" and to Extend the Fact Discovery Cutoff Date ("Motion to Amend") [#165, filed February 8, 2016]. The Motion for Protective Order was referred to this Magistrate Judge pursuant to 28 U.S.C. § 636(b), the Order of Reference dated March 5, 2015 [#4], and the

memoranda dated January 28, 2016 [#159] and February 9, 2016 [#166]. This court has reviewed the Motions, as well as the Responses thereto [#175, #176, #177, #178, #189], and subsequent Replies [#185, #187, #191], the applicable case law, and the comments offered during oral argument on March 24, 2016 [#204]. For the reasons stated in this Order, this court GRANTS the Motion for Protective Order and GRANTS IN PART and DENIES IN PART the Motion to Amend.

## BACKGROUND

The background of this case has been discussed in detail in other court orders, *see, e.g.*, [#94], and accordingly, the court will focus on the circumstances relevant to the disposition of the instant Motion for Protective Order. Plaintiffs Jody and Delfina Blatchley (collectively, "Plaintiffs" or "the Blatchleys") initiated this personal injury action against Defendants. As part of discovery in this action, the Blatchleys have sought "any and all information regarding Plaintiff Jody Blatchley created by or for any professional review, peer review or quality control or management from Defendant [St. Anthony Summit]." [#189 at 2]. St. Anthony Summit objected to producing the requested information on the basis of multiple privileges, and filed the instant Motion for Protective Order on the basis of Colorado's Peer Review Privilege. The Blatchleys oppose the entry of a Protective Order. They argue that, "[c]omparison of statements outside of the record and those in the record yield conflicting accounts of Plaintiff Jody Blatchley's medical condition and treatment." [#189 at 2]. They seek "the factual information used during peer review activities undertaken by Defendant [St. Anthony Summit], and assert that "[n]one of the claimed privileges provide a basis to withhold the factual information provided to, and considered by the review board in this case." [#189 at 2]. In Reply, St.

Anthony Summit agreed with Plaintiffs that the court's *in camera* inspection of the documents withheld on the basis of privilege would be appropriate. [#191 at 3]. On April 11, 2016, St. Anthony Summit provided approximately fifty documents for this court's *in camera* review.[1]

## ANALYSIS

### I. Applicable Law

#### A. Pre-Trial Discovery Generally

The Federal Rules of Civil Procedure allow for discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The party resisting discovery based on a privilege carries the burden of establishing that the privilege applies. *Zander v. Craig Hosp.*, 743 F. Supp. 2d 1225, 1231-32 (D. Colo. 2010) (citation omitted) ("*Zander II*"). In establishing the applicability of the privilege, the resisting party must expressly assert the claim and describe the nature of the documents, ordinarily through maintenance of a privilege log. *Id.* The determination of whether information is discoverable must be assessed by the parties and the court on a case-by-case basis. *See* Fed. R. Civ. P. 26(b)(1 (eff. Dec. 1, 2015).[2] "Discovery in federal courts is generally governed by the Federal Rules of Civil Procedure regardless of whether federal jurisdiction is based on a federal question or diversity of citizenship," *Etter v. Bibby*, No. 10-CV-00557-JLK-CBS, 2011 WL 5216855, at *4 (D. Colo. Nov. 2, 2011) (citation omitted); however, where

---

[1] These documents have been docketed under Level 3 restriction, to reflect the *in camera* nature of the submission.

[2] Consistent with 28 U.S.C. § 2074(a) and the Orders of the United States Supreme Court dated April 28, 2015, this court finds that it is just and practicable, and therefore, applies the Federal Rules of Civil Procedure effective December 1, 2015 to this instant Motion.

federal jurisdiction is based solely on diversity, such as here, state law controls the determination of privileges. *Zander II*, 743 F. Supp. 2d at 1230.

### B. Rule 26(c) Protective Orders

Rule 26(c) of the Federal Rules of Civil Procedure provides that a court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c). The party seeking a protective order bears the burden of establishing its necessity, *Centurion Indus., Inc. v. Warren Steurer & Assoc.*, 665 F.2d 323, 325 (10th Cir. 1981), but the entry of a protective order is left to the sound discretion of the court. *See Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008). As part of the exercise of its discretion, the court may also specify the terms for disclosure. Fed. R. Civ. P. 26(C)(1)(B). The good cause standard is highly flexible, having been designed to accommodate all relevant interests as they arise. *See Rohrbough*, 549 F.3d at 1321.

### C. Colorado Professional Review Act

The Parties do not dispute that Colorado privilege law governs in this case. The Colorado General Assembly enacted the Colorado Professional Review Act ("CPRA") in recognition of the importance of upholding the standards of quality, standards of professional conduct, and standards of appropriate care for the practice of medicine and nursing, and to encourage professional peer review in the health care industry. Colo. Rev. Stat. § 12-36.5-103. *See also Ryskin v. Banner Health, Inc.* No. 09-CV-01864-MEH-KMT, 2010 WL 2742710, at *1 (D. Colo. July 9, 2010). A licensed hospital may establish a professional review committee to review and evaluate the quality and appropriateness of patient care provided by any licensed physician. Colo. Rev. Stat. §§ 12–36.5-104(1), (2) and (4)(a). In furtherance of the CPRA's

4

goals to encourage physicians to engage in peer review and to provide immunity to the physicians who participate in the peer review so that they may "exercise their professional knowledge" and judgment without undue fear of litigation, the General Assembly created a statutory privilege to ensure that peer review records would not be discoverable. *See id.* at § 12–36.5–104(10) ("The records of a professional review committee, a governing board, or the committee on anticompetitive conduct shall not be subject to subpoena or discovery and shall not be admissible in any civil suit brought against a physician who is the subject of such records."). *See also Etter*, 2011 WL 5216855, at *4; *Center For Legal Advocacy v. Hammons,* 323 F.3d 1262, 1264 n.2 (10th Cir. 2003).

A professional review committee includes a governing board, a hearing panel appointed by a governing board to conduct a hearing under section 12-36.5-104(7)(a), and an independent third party designated by a governing board under section 12-36.5-104(8)(b). Colo. Rev. Stat. § 12-36.5-102. To qualify as a professional review committee, the majority of the committee members must be licensed physicians who are actively engaged in the practice of medicine in Colorado. *Id.* at 12-36.5-104(2). For the Peer Review privilege to apply, the records of a professional review committee "must be derived from an investigation 'conducted in conformity with written bylaws, policies, or procedures' adopted by the committee's governing board." *Atteberry v. Longmont United Hosp.,* 221 F.R.D. 644, 648 (D. Colo. 2004) (citing Colo. Rev. Stat. § 12-36.5-104(6)(b)). The following does not qualify as "records" under the CPRA: "written, electronic, or oral communications by any person that are otherwise available from a source outside the scope of professional review activities, including medical records and other health information." Colo. Rev. Stat. § 12-36.5-102(7)(b). In considering the application of the

law, courts have found that documents that reflect the policies and procedures of the peer review process itself are also not privileged. *See Zander v. Craig Hosp.*, 267 F.R.D. 653 (2010). Original source documents, *i.e.* documents that are created outside of the peer review process, even if utilized in the peer review process, are not protected by the privilege. *Zander II*, 743 F. Supp. 2d at 1231.

## II.    Application

### A.    Discovery Requests

Against this backdrop, this court considers St. Anthony Summit's Motion for Protective Order. The Blatchleys requested in discovery, "[a]ll written bylaws, policies, procedures, and other DOCUMENTS, if any, adopted by YOU for quality control, peer review, grant of surgical privileges, and any other oversight of Defendant in place at the time of the INCIDENT." [#157 at 2]. While St. Anthony Summit objected to this request on the basis that "[q]uality and peer review documents are privileged and are not calculated to lead to the discovery of admissible evidence," subject to the objection, it produced "the policies and bylaws" requested by Plaintiffs. [*Id.*] The Blatchleys also sought:

> Any and all DOCUMENTS pertaining to or mentioning Plaintiff Jody Blatchley, created by or for any professional review, peer review, or quality control or management committee. This request includes but is not limited to any and all minutes or other records of any investigation, examination, hearing, meeting, or any other proceeding of any professional review committee governing body, or quality management committee in connection with Plaintiff Jody Blatchley.

[#157 at 2-3]. St. Anthony Summit objected to this request, "as it seeks information which is privileged under the Colorado Peer Review Statute pursuant to Colo. Rev. Stat. §13-21-110 and

§25-3-109, and the Healthcare Quality Improvement Act of 1986, 42 U.S.C. §11101, et seq.," and provided a privilege log for the documents subject to this request. [*Id.* at 3].

St. Anthony Summit argues in the Motion for Protective Order that it maintains a "Trauma Executive Peer Review Committee," which meets the definition of a "professional review committee" under the CPRA. [#157 at 7; #157-4 at ¶ 2]. St. Anthony Summit further argues that the documents identified in its privilege log constitute "records" protected by the Peer Review Privilege because "they are written, electronic, or oral communications arising from the activities of [St. Anthony Summit's] professional review committee." [#157 at 8; #157-4 at ¶ 10]. More specifically, the records include "the testimony and written reports of witnesses, documents and other material presented to the Trauma Executive Peer Review Committee, the Committee's notes, memoranda, minutes, reports, analyses, and other records relating to its investigatory function." [#157 at 9; #157-4 at ¶ 11]. Shelly Almroth, a Trauma Program Manager with St. Anthony Summit, attests that these documents were generated during an investigation that was conducted in conformity with the written bylaws, policies, and procedures adopted by the governing board of St. Anthony Summit's professional review committee. [#157 at 9; #157-4 at ¶ 12; #191-2 at ¶¶ 4-7]. The Blatchleys do not dispute that St. Anthony Summit's Trauma Executive Peer Review Committee constitutes a professional review committee as defined by the CPRA. Rather, the Blatchleys contend that the documents they seek in these discovery requests contain the factual basis for the peer review, and thus do not qualify as "records" under the CPRA. [#189 at 11].

B.    *In Camera Review*

As an initial matter, the court addresses Plaintiffs' concern that the documents as reflected in the Fourth Amended Privilege Log were not, in fact, generated as part of a peer review process. From the *in camera* review of the documents, this court determined that the peer review process related to Mr. Blatchley was associated with a unique identifier. Based on the use of that unique identifier, the peer review process associated with Mr. Blatchley's care was in place no later than March 21, 2013. Plaintiffs contend that letters to Dr. Geddes falls outside the definition of records and the claim of privilege cannot stand. [#189 at 14]. After review of such letters, this court respectfully disagrees. Dr. Geddes's correspondence with various individuals involved with Mr. Blatchley's care, and those individuals' responses to him, amount to "written communications by any person arising from any activities of a professional review committee, including interviews or statements, reports, memoranda, assessments, and progress reports developed to assist in professional review activities." Colo. Rev. Stat. §12-36.5-102(7)(a)(III).

Similarly, Plaintiffs' concerns that St. Anthony Summit is improperly withholding original source medical records are not borne out by this court's review. While the peer review committee certainly considered information derived from medical records, no original source documents are contained as part of the privileged document set. Rather, as Ms. Almroth explained, documents such as timelines were created as part of the peer review process from information contained in the medical records. [#191-2 at ¶¶ 8-9].

C.    **Discoverability of Facts Contained in Peer Review Documents**

Plaintiffs contend that even if the documents themselves are peer review records, any facts embedded in them, separate from information about the deliberation of the peer review

committee, are discoverable. It is clear that facts, to the extent they are reflected in another source (*e.g.*, the original medical records and informal discussions between physicians outside the peer review process), are not protected from discovery simply because they were utilized within the peer review process. *See Zander*, 267 F.R.D. at 659-60. Nevertheless, nothing within the CPRA or its interpreting case law suggests that (1) a distinction is made between facts and deliberation under the CPRA's shield against subpoenas or discovery, or (2) facts are discoverable *from records generated as part of the peer review process*. *See Zander*, 267 F.R.D. at 659 (citing *Doe v. UNUM Life Ins. Co. of America,* 891 F. Supp. 607, 611 (N.D. Ga. 1995) (applying Georgia law and holding that "documents that would have existed regardless of whether the committee may have considered them in an investigation are discoverable, but only from their original source")).

This conclusion is consistent with the Colorado Supreme Court's decision in *Colorado Medical Bd v. Office of Administrative Courts*, 333 P.3d 70 (2014). In that case, a doctor who had been denied a medical license sought information that she believed was relevant in Letters of Concern, which are private letters sent from the Board to licensed doctors concerning errant conduct that could lead to serious consequences if not corrected. *Id.* at 72. In finding that such Letters of Concern were not discoverable based on the construction of the statute, the Colorado Supreme Court made no distinction between the facts contained in the Letters of Concern, versus any information reflecting the "deliberative process." Rather, the Colorado Supreme Court found that the Letters of Concern were peer review records, and as such, were immune from subpoena or discovery.

9

This conclusion is also entirely consistent with the purpose of the CPRA, which is "to encourage discipline and control of the practice of health care rendered by physicians by committees made up of physicians licensed to practice in this state." Colo. Rev. Stat. § 12-43.5-101. The statute goes on to provide "[i]t is the duty of such committees to openly, honestly, and objectively study and review the conduct of practice by members of the profession, including the quality of service…" *Id.* As the Colorado Supreme Court previously held,

> It would be unreasonable to impose upon committee members a statutory duty to "openly, honestly, and objectively study and review" the conduct of practicing members of the medical profession if the records of their study and review were available for discovery in subsequent litigation seeking money damages against the hospital, its review committees and the individual members thereof for disciplinary action imposed in the peer review process. In addition, members of the medical profession cannot be expected to initiate or willingly participate in a peer review investigation if their testimony and reports may be subjected to discovery in subsequent civil litigation involving issues far beyond a meaningful judicial review of the committee's action.

*Franco v. Dist. Court In & For City & Cty. of Denver*, 641 P.2d 922, 928-29 (Colo. 1982).

From a practical point of view, the facts considered by the peer review committee appear inextricably intertwined with the investigation by and deliberation of the committee. Further, the mere circumstance that the peer review committee considered certain facts, and not others, does not appear particularly salient to the core inquiry in this case, *i.e.*, whether Defendants breached their respective duties to Mr. Blatchley by failing to diagnose his compartment syndrome earlier in the treatment process. Therefore, this court declines to read an exception into the CPRA that provides for the discovery of facts reflected in records generated as part of a peer review process. To the extent, however, that St. Anthony Summit has not produced the source medical records from which the peer review records were created, it should proceed to do so immediately.

### D.      Discovery to Individual Defendants

In so ruling, this court acknowledges that it may be important for Plaintiffs to discover the communications regarding Mr. Blatchley's treatment, which occurred outside of the peer review process. This court agrees that Plaintiffs should be permitted to propound some limited, additional discovery to the individually named Defendants, in part to determine whether there were communications exchanged, photos taken, or documents created outside the peer review process that may be discovered. To that end, this court will amend the Scheduling Order to permit Plaintiffs collectively to propound an additional three (3) interrogatories, three (3) requests for production, and three (3) requests for admissions to each of the individually named Defendants (thus excluding St. Anthony Summit and Vail Orthopaedics). While this court finds that Plaintiffs' request seeking records of other, unrelated patient files is not supported by Rule 26(b)(1), the court otherwise leaves to Plaintiffs the discretion to identify the appropriate topics for these additional discovery requests. This court respectfully declines to deem as proper Plaintiffs' discovery requests that, when served, exceeded their allotment. Plaintiffs improperly served these requests prior to seeking leave to expand the discovery limitations. To the extent Plaintiffs wish to pursue the previously-sought discovery, they must re-serve those requests consistent with this Order.

### CONCLUSION

Therefore, for the foregoing reasons, **IT IS ORDERED** that:

(1)     Defendant St. Anthony Summit Medical Center's Motion for Protective Order Regarding Privileged Documents Identified in Defendant's Amended Privilege Log for Second Supplemental Disclosures Pursuant to F.R.C.P. 26(A)(1) [#157] is **GRANTED**;

(2)     The Clerk of the Court is **DIRECTED** to file the documents delivered to this court for *in camera review* as Level 3 Restricted;

(3)     Plaintiffs' Motion to Amend the Civil Scheduling Order to Expand the Discovery Limitations to "Per Party" and to Extend the Fact Discovery Cut-Off [#165] is **GRANTED IN PART and DENIED IN PART**;

(4)     Plaintiffs collectively may propound an additional three (3) interrogatories, three (3) requests for production, and three (3) requests for admissions to each of the individually named Defendants (but not St. Anthony Summit or Vail Orthopaedics);

(5)     The deadline for completing fact discovery is extended from April 25, 2016 up to and including **May 25, 2016**; and

(6)     Consistent with the Order overruling Plaintiffs' Objection [#206], the Parties will submit a proposed Protective Order for the court's consideration no later than **April 28, 2016**, that includes terms that provide for the treatment of documents designated as "confidential," with any disputed terms highlighted for the court's consideration and disposition.

DATED:  April 18, 2016                               BY THE COURT:

                                                                     s/ Nina Y. Wang
                                                                     United States Magistrate Judge